LESHAUN BENJAMIN,

        Plaintiff,

v.                                     Case No. 18-cv-570-pp

ALICIA SANCHEZ,

        Defendant.

**ORDER SCREENING PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 18)**

On April 11, 2018, plaintiff Leshaun Benjamin, a state prisoner representing himself, filed a complaint under 42 U.S.C. §1983. Dkt. No 1. On September 12, 2018, the court declined to screen that complaint because 1) it was unclear whether the plaintiff meant to have some documents take the place of others, 2) the pleadings did not comply with Federal Rule of Civil Procedure 15(d) and 3) the pleadings violated Fed. R. Civ. P. 18(a) and 20(a)(2). Dkt. No. 11 at 4-7. The court gave the plaintiff the opportunity to file a single, amended complaint, correcting the problems the court had identified in the order. Id. at 10-11. After the plaintiff notified the court of his new address and the clerk's office provided him with a blank complaint form, instructions and a copy of the self-help guide for prisoners, the plaintiff filed the amended complaint. Dkt. No. 18.

1

The law requires the court to screen complaints filed by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint, or part of it, if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain enough facts, accepted as true, to make the complaint "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, district courts follow the principles in Twombly by first "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. Id. Second, if there are well-pleaded factual allegations, the court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

2

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or laws of the United States and that whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

I.      The Facts in the Complaint

The plaintiff alleges that on September 8—he doesn't say which year—Milwaukee Police Department officers escorted him to the Milwaukee Mental Health Complex. Dkt. No 18 at 2. There, the plaintiff says he spoke with a Nurse Alicia Sanchez. He states that he attempted to explain to Nurse Sanchez what had happened to him while he was at St. Francis Hospital and how his medications had been misplaced. Id. He asserts that Nurse Sanchez began to doubt him, telling him that he was lying after laughing at him. Id. The plaintiff says that this caused him to become very upset and defensive. Id.

The plaintiff says that after his conversation with Nurse Sanchez, he walked to the television area where he watched television for about forty minutes. Id. He states that "out of the blue," Nurse Sanchez and security came and "escorted [him] to the restraint bed where [he] was then stuck with a

3

needle." Id. He states he "told 'Sanchez' that she [could not] force medication upon [him] against [his] will which is a violation of [his] constitutional rights." Id. at 2-3.

The plaintiff seeks compensatory and punitive damages. Id. at 4.

II.     Analysis

The plaintiff alleges that Sanchez violated his rights by injecting him with medication against his will while he was at the MMHC.

The plaintiff's amended complaint does not state what year these events occurred, but the original complaint—the one the court declined to screen because it contained multiple claims against multiple different defendants—states that the plaintiff was taken to the MMHC on September 9, 2016. Dkt. No. 1 at 3. The Wisconsin Department of Corrections Inmate Locator web site indicates that in September 2016, the plaintiff was not in custody in any Department of Corrections facility. https://appsdoc.wi.gov/lop/detail.do (last visited July 10, 2020).

The amended complaint says that the Milwaukee Police Department escorted the plaintiff to the MMHC, but doesn't say whether that was because he was being detained on criminal charges, was voluntarily committed under Wis. Stat. §51.10 or had been involuntarily committed under Wis. Stat. §51.20. The original complaint says that as a result of the incident with Nurse Sanchez, the plaintiff was booked into the Milwaukee County Jail on a charge of disorderly conduct. Dkt. No. 1 at 5. The Wisconsin Circuit Court Access

4

Program shows that on September 14, 2016, the defendant was charged with disorderly conduct in State v. Benjamin, 2016CM003254 (Milwaukee County Circuit Court), available at https://wcca.wicourts.gov (last visited July 10, 2020).

It appears, therefore, that when the incident with Nurse Sanchez took place, the defendant was not a pretrial detainee and was not a sentenced inmate. If this is true, and the plaintiff was either voluntarily or involuntarily at the MMHC at the time Nurse Sanchez administered the medication, the question presented by the plaintiff's claims is whether Nurse Sanchez's involuntary administration of medication violated the plaintiff's constitutional rights. "[I]nvoluntarily committed mental patients do retain liberty interests protected directly by the Constitution, and . . . these interests are implicated by the involuntary administration of antipsychotic drugs." Mills v. Rogers, 457 U.S. 291, 299 n.16 (1982). The scope of the liberty interest is defined by state law. Id. at 300. And it would matter what kind of medication Sanchez gave the plaintiff and why. In the amended complaint, the plaintiff does not say what kind of medication Nurse Sanchez gave him when she "stuck" him with the needle. In the original complaint, he indicated only that he was given an "intramuscular injection." Dkt. No. 1 at 4. The court can only assume that what Nurse Sanchez gave the plaintiff was antipsychotic medication.

If the court is wrong, and the plaintiff was a sentenced inmate at the time of these events, the Supreme Court held in Washington v. Harper, 494

U.S. 210, 221 (1990) that a sentenced prisoner "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." This interest is not unlimited; "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." Id. at 227.

If the plaintiff was a pretrial detainee at the time of these events, the analysis is similar. Two years later, the Supreme Court concluded that "[t]he Fourteenth Amendment affords at least as much protection to persons the State detains for trial." Riggins v. Nevada, 504 U.S. 127, 135 (1992). The state can satisfy the requirements of due process as to a pretrial detainee by demonstrating that "treatment with antipsychotic medication was medically appropriate and, considering less intrusive alternatives, essential for the sake of [the pretrial detainee's] own safety or the safety of others." Id. (citing Harper, 494 U.S. at 225-26).

The plaintiff did what the court asked him to do in filing the amended complaint—he selected one of his many claims and presented it, standing alone. But he left out a lot of facts that will be necessary to evaluate the claim in the future. That said, at this early screening stage, the court concludes that the plaintiff has stated a claim against Nurse Sanchez of the Milwaukee Mental Health Center for violating his Fourteenth Amendment rights by giving him

6

what were possibly antipsychotic drugs against his will while he possibly was involuntarily committed at the MMHC in September 2016. The court will allow him to proceed on that claim.

## III. Conclusion

The court **ORDERS** the United States Marshal to serve a copy of the amended complaint and this order on defendant Nurse Alicia Sanchez under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Alicia Sanchez to respond to the complaint.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff,

who will scan and e-mail documents to the court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 13th day of July, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.